**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LAUDIE HUNTER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV. NO. 1:26-CV-00270-KD-C** |
| | ) | |
| **MOBILE HOUSING AUTHORITY, et al.,** | ) | |
| **Defendant.** | ) | |

# ORDER

This action is before the Court on Plaintiff Laurie Hunter's emergency motion for temporary restraining order and preliminary injunction and exhibits (Doc. 16), comprehensive notice of supplemental evidence (Doc. 18), notice of real-time supplemental evidence (Doc. 19), Defendants' Casey Dickinson, Marie Mhoon, Mobile Housing Authority, Merlinda Nettles, and Michael Pierce's response in opposition and exhibits (Doc. 20), and Hunter's reply (Doc. 21). Upon consideration, and for the reasons set forth herein, the motion for a temporary restraining order (Doc. 16) is **DENIED.**

## I. Procedural History

Hunter commenced this action against the above-named defendants in the Circuit Court of Mobile County on June 18, 2026. (Doc. 1-1 at 85). Her complaint contained nineteen claims including, but not limited to, a claim under 42 U.S.C. §1983 for violation of Hunter's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution (Doc. 1-1 at 57, 61) and a claim for injunctive and declaratory relief. (Doc. 1-1 at 77).[1] Defendants removed the case to this Court under 28. U.S.C. § 1331. (Doc. 1 at 3). Defendants filed a motion to dismiss the complaint or alternatively, a motion for a more definite statement. (Doc. 3). In response, Hunter

[1] For a comprehensive list of her various state and federal claims, see Doc. 1-1 at 53–82.

filed a Motion for leave to file a first amended complaint. (Doc. 7). Both motions are currently pending. On September 10, 2026, Hunter filed an emergency ex parte motion for a TRO (Doc. 12), which this Court denied for failure "to show a substantial likelihood of success on the merits of any claim raised in the Complaint," and failure "to show immediate and irreparable harm." (Doc. 13 at 3, *sealed*). Hunter has now filed this second motion for a TRO. (Doc. 16) It has been fully briefed and is now ripe for consideration.

## II. Facts[2]

Hunter is a resident of Downtown Renaissance, a senior public housing facility in Mobile, Alabama. (Doc. 1-1 at 13). The Mobile Housing Authority provides federally funded public housing programs and related services to Mobile's low-income residents. (Doc. 1-1 at 13).

On September 14, 2026, an ongoing Resident Council election began at Downtown Renaissance that is the basis of Hunter's motion for a temporary restraining order. (Doc. 16 at 4). The allegations in the Complaint, as far as the Court can tell, are not the same events as those discussed in the TRO motion. As the Court understands it, Hunter's Complaint (Doc. 1-1) is not related to the current election cycle, but rather the current election cycle is another example of the "administrative lawlessness" (Doc. 16 at 2) described in the Complaint.

On September 10, 2026, Hunter alleges that flyers were distributed informing Downtown Renaissance residents of a September 14, 2026, meeting regarding the Resident Council election. (Doc. 16 at 4); (Doc. 20 at 2). Sometime after that meeting, Mandala Milroy, an MHA representative, sent a comprehensive email outlining election procedures, the requirements for eligibility to serve on the Resident Council, and important election dates. (Doc. 16-1 at 2–4). The

[2] All the following facts are taken from Hunter's Complaint (Doc. 1-1), the Motion for TRO (Doc. 16), and her two "Supplemental Evidence" documents (Docs. 18, 19).

notice states that the NAACP was providing independent, third-party oversight of the Resident Council election. (Doc. 16-1 at 4).

On September 28, Hunter emailed the President of the NAACP Mobile County Branch informing him of her concerns regarding the true independence of the election and her concerns regarding the election's non-compliance with federal regulations 24 C.F.R. § 964.125 and § 964.130. (Doc 16-3 at 2). Hunter also alleges that on this same day, campaign materials that she placed throughout the building were "vandalized, crumpled up, and discarded inside a closed property elevator." (Doc. 16 at 6). She requested surveillance footage of the elevators, but Defendant Merlinda Nettles refused to provide it. (Doc. 16 at 6).

Hunter alleges that on September 29, 2026, the Resident Services' Department posted a mandate throughout the Downtown Renaissance property. (Doc. 16 at 4). The notice states that property management would verify eligibility in the election before candidates are confirmed, and that prior to confirmation, candidates were barred from campaigning. (Doc. 16 at 4).

At some point, Hunter alleges that she put up "public safety bulletins" offering a private cash reward for information leading to the identity of the individuals who vandalized her campaign materials. (Doc. 16 at 6). On September 30, property management "systematically removed and destroyed" them. (Doc. 16 at 6). Simultaneously, management removed the incumbent president's campaign materials as well. (Doc. 16 at 7).

Hunter alleges that on October 1, 2026, Milroy called Hunter to confirm that Hunter was accepting a nomination for President of the Resident Council. (Doc. 16 at 2). In that conversation, Milroy informed Hunter that Mhoon is her direct supervisor in managing the election. (Doc. 16 at 2). Milroy informed Hunter that she was not aware of Hunter's pending federal lawsuit and stated that it "had no bearing on her." (Doc. 16 at 2).

## III. Analysis

Hunter requests the Court to enter a Temporary Restraining Order, and after a hearing, a Preliminary Injunction to:

A. Immediately stay, freeze, and halt the current Resident Council election cycle at Downtown Renaissance;

B. Order Defendants to immediately preserve and archive all property surveillance security logs and elevator bay tapes for the period of September 21 through September 30, 2026; and

C. Order a formal evidentiary hearing to establish an independent, neutral election infrastructure compliant with 24 C.F.R. Part 964.

Doc. 16 at 8–9.

A federal court may grant a temporary restraining order or preliminary injunction only if the movant establishes: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005); Long v. Sec'y, Dep't of Corr., 924 F.3d 1171, 1176 (11th Cir. 2019). "A preliminary injunction 'is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites.'" Friends of the Everglades, Inc. v. Sec'y of United States Dep't of Homeland Sec., 174 F.4th 822, 830 (11th Cir. 2026). Therefore, Hunter must make an unambiguous showing as to all four elements to obtain a temporary restraining order or preliminary injunction.

*a. Likelihood of Success on the Merits*

i. The § 1983 Claim

Hunter argues that she has a likelihood of success on the merits because the MHA Defendants 1) have violated the 30-day notice mandate contained in 24 C.F.R. § 964.130; and 2) are internally controlling the Resident Council election, which is evidenced through administrative

mandates and the lack of the NAACP's involvement in the election. (Doc. 16 at 4–5). The MHA Defendants argue in response that Hunter has not shown a likelihood of success because Hunter's underlying case is unclear, and that the election complies with HUD guidelines. (Doc. 20 at 5).

Hunter's pleadings are liberally construed. See United States v. Ogiekpolor, 122 F.4th 1296, 1304 (11th Cir. 2024). To the best the Court can tell, considering the operative complaint (Doc. 1-1) and the present motion (Doc. 16), Hunter is asserting, at minimum, a § 1983 claim for violation of 24 C.F.R. § 964.130. Whether violation of the regulations in Part 964 can be used to support a claim under § 1983 is a matter of first impression in the Eleventh Circuit.

Section 1983 creates a private cause of action when a person has been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" by a state actor. 42 U.S.C. § 1983. But the Supreme Court has "recognized two exceptions to the application of § 1983 to remedy statutory violations": (1) "where Congress has foreclosed such enforcement of the statute in the enactment itself" and (2) "where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983." Wright v. City of Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 423 (1987).

In Wright, the Supreme Court held that the Brooke Amendment to the Housing Act of 1937, codified at 42 U.S.C. § 1437a(a), created an enforceable right within the meaning of Section 1983 because "[t]he Brooke Amendment could not be clearer: . . . tenants could be charged as rent no more and no less than 30 percent of their income. This was a mandatory limitation focusing on the individual family and its income. The intent to benefit tenants is undeniable." Wright, 479 U.S. at 430.

By contrast, 42 U.S.C. § 1437r—the statute that 24 C.F.R. § 964.130 implements—does not confer any enforceable right upon tenants; Section 1437r merely provides funding and other

financial incentives that encourage housing authorities to operate resident management corporations. "A housing authority that manages [its] buildings itself loses the extra revenues that may be available if a resident management corporation is run efficiently. But [42 U.S.C. § 1437r] do[es] not oblige the public agency to turn management over to tenants. There is no legal obligation to enforce, through § 1983 or any other device." Mungiovi v. Chicago Pub. Hous. Auth., 98 F.3d 982, 984 (7th Cir. 1996).

Of course, Section 1437r and its implementing regulations, including 24 C.F.R. § 964.130, do impose certain obligations on housing authorities. But those obligations are merely "condition[s] attached to a grant of money from the Department of Housing and Urban Development." Mungiovi, 98 F.3d at 985. In other words, they are contractual obligations that a housing authority owes to HUD, not statutory rights that tenants can enforce by way of Section 1983. Consequently, "the obligation[s] must be enforced in the way specified by contract—or by the standard contractual terms that appear in" the implementing regulation. Id.

In Mungiovi, which dealt with 24 C.F.R. § 964.18, the Seventh Circuit held that "enforcement is administrative," requiring aggrieved tenants to appeal to HUD via the avenue prescribed by 24 C.F.R. § 964.18(a)(6), and the remedy is "a reduction in funding" or "the appointment of a receiver who will manage the [housing authority] until things can be straightened out." 98 F.3d at 985 (citing 42 U.S.C. § 1437d (providing consequences for a housing authority's breach of its contract with HUD)). "Lawsuits by individual tenants are not among the prescribed consequences," and "Section 1983 cannot be used . . . to replace an administrative enforcement scheme with a judicial one." Id.

Likewise, here, HUD requires a housing authority to "establish a procedure to appeal any adverse decision relating to failure to satisfy HUD minimum standards" for resident council

elections, and the appeal must be made to "a jointly selected third-party arbitrator at the local level," not a federal district court. 24 C.F.R. § 964.130(c); accord 42 U.S.C. § 1437d(k) ("The Secretary shall by regulation require each public housing agency . . . to establish and implement an administrative grievance procedure" for tenants to appeal "adverse public housing agency action[s].").

Hunter has not alleged any lack of an opportunity "to appeal any adverse decision relating to failure to satisfy HUD minimum [resident council election] standards," (i.e. by alleging lack of procedures in place to appeal). § 964.130. Like the Seventh Circuit found in Mungiovi, this Court also finds that a private lawsuit under Section 1983 "cannot be used to bypass these remedies." Mungiovi, 98 F.3d at 985. Section 20 of the Housing Act is meant to encourage Housing Authorities to let tenants play a role in management, "[t]he extra requirements imposed by HUD in Part 964 . . . must be enforced by HUD, if they are to be enforced at all." Id.

Thus, Hunter has failed to show a likelihood of success on the merits because judicial intervention is not the proper remedy to correcting a resident council election that does not conform to HUD minimum guidelines.

ii. The First Amendment Claim

Much of Hunter's discussion regarding "irreparable harm" in her TRO motion revolves around violation of her First Amendment rights, not around the lack of an unbiased resident council election. Thus, the Court assumes that her TRO focuses on her claims regarding both Part 964 and the First Amendment to the United States Constitution. Hunter alleges that the MHA Defendants have violated her First Amendment rights by removing and destroying her campaign posters and public safety bulletins. (Doc. 16 at 6–7).

"The constitutionality of government regulation of its own property depends upon the character of the property at issue." Daniel v. City of Tampa, Fla., 38 F.3d 546, 549 (11th Cir. 1994). For purposes of First Amendment analysis, the Supreme Court has identified three types of government-owned property: the traditional public forum, the designated forum, and the nonpublic forum. United States v. Kokinda, 497 U.S. 720, 725–26 (1990). "A nonpublic forum is [p]ublic property which is not by tradition or designation a forum for public communication, and limits on access to such a forum must meet only a reasonableness standard." Crowder v. Hous. Auth. of Atlanta, 990 F.2d 586, 591 (11th Cir. 1993) (internal quotations omitted).

Hunter has provided no evidence in her pleadings, motion, or supplemental material that would help this Court conclude what kind of forum Downtown Renaissance is. But, based on other Eleventh Circuit case law, the Court concludes that it is likely a nonpublic forum. See Daniel, 38 F.3d at 550 (finding Housing Authority property is nonpublic forum where mission of housing authority is to provide safe housing and property access is limited to lawful residents, guests, and those conducting official business). In that case, any regulation on speech must be "reasonable and not based upon a desire to suppress a certain viewpoint." Crowder, 990 F.2d at 591.

Hunter argues that the MHA Defendants destroyed her campaign materials and safety bulletins to "suppress Plaintiff's safety and campaign visibility." (Doc. 16 at 6). But, in the same breath, acknowledges that "management *simultaneously* ordered the incumbent president to remove his materials as well." (Doc. 16 at 6–7). The only difference the Court can find is that Plaintiff alleges her materials were removed on September 28, and the incumbent president's were removed two days later, on September 30. (Doc. 16 at 6). But Hunter does not allege when the president's notices were posted. Thus, there is no way to conclude that those allegations alone demonstrate the MHA Defendants removing campaign materials and other notices were

unreasonable or not viewpoint neutral. Thus, Hunter has not "unambiguously" demonstrated a likelihood of success on the merits of her First Amendment claim.

*b. Irreparable Harm*

Alternatively, Hunter has also failed to show that she will be irreparably harmed if the election is allowed to continue as currently scheduled. She argues that she meets the irreparable harm element by alleging the destruction of her campaign materials and safety bulletins constitutes tenant intimidation and deprives her of her "First Amendment freedoms and the right to run for office in a fair, un-obstructed election." (Doc. 16 at 7).

But, as discussed above, the 24 C.F.R. § 964.130 provides a process "to appeal any adverse decision relating to failure to satisfy HUD minimum standards" when it comes to resident council elections. Hunter has failed to address why the alternative remedies discussed above will not provide her with sufficient relief.

## IV. Conclusion

Setting aside that Hunter's TRO asserts claims that are not included in her compliant, Hunter has failed to show a substantial likelihood of success on the merits or immediate and irreparable harm regarding the claims in her TRO. Accordingly, Hunter's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 16) is **DENIED.**

**DONE** and **ORDERED** this 27th day of October 2026.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**