**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LAURIE HUNTER** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV. NO. 1:26-CV-00270-KD-C** |
| | ) | |
| **MOBILE HOUSING AUTHORITY, et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Plaintiff Laurie Hunter's motion to disqualify defense counsel and exhibits (Doc. 6) and Defendants Casey Dickinson, Marie Mhoon, Mobile Housing Authority, Merlinda Nettles, and Michael Pierce's response in opposition and exhibits (Doc. 14). For the reasons explained herein, the motion to disqualify is **DENIED.**

## I. Procedural History

Hunter commenced this action against the above-named defendants in the Circuit Court of Mobile County on June 18, 2026. (Doc. 1-1 at 85). Her complaint contained nineteen claims including, but not limited to, a claim under 42 U.S.C. § 1983 for violation of Hunter's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution (Doc. 1-1 at 57, 61) and a claim for injunctive and declaratory relief. (Doc. 1-1 at 77).[1] Defendants removed the case to this Court under 28. U.S.C. § 1331. (Doc. 1 at 3). Defendants filed a motion to dismiss the complaint or alternatively, a motion for a more definite statement. (Doc. 3). In response, Hunter filed this motion to disqualify defense counsel, (Doc. 6), and a motion for leave to file a first amended complaint. (Doc. 7). All motions are currently pending. This motion to disqualify has been fully briefed and is ripe for consideration.

[1] For a comprehensive list of her various state and federal claims, see Doc. 1-1 at 53–82.

## II. Facts

Hunter is a resident of Downtown Renaissance, a senior public housing facility in Mobile, Alabama. (Doc. 1-1 at 13). She is proceeding *pro se*.

Defendant Mobile Housing Authority provides federally funded public housing programs and related services to Mobile's low-income residents. (Doc. 1-1 at 13). MHA has consented to dual representation of itself and Defendants Pierce, Dickinson, Nettles, and Mhoon in this action. (Doc. 14-3 at 1).

Defendant Michael Pierce is the former CEO of the MHA. (Doc. 14-5 at 1). According to Hunter, MHA terminated Pierce following "serious public controversies and administrative complaints regarding housing conditions and financial mismanagement." (Doc. 6 at 2). Termination proceedings followed, and in a publicly available settlement reached between MHA and Pierce, MHA agreed to pay Pierce $153,228.57 as contractual severance pay, $175,000 as non-wage and or compensatory damages, and $15,000 as reimbursement for Pierce's attorney's fees. (Doc. 6-2 at 3). According to Pierce, he was represented by Attorney Edward L.D. Smith in those termination proceedings. (Doc. 14-5 at 1). Pierce has consented to dual representation of himself, MHA, and MHA's current employees in this action. (Doc. 14-5 at 1).

Defendants Casey Dickinson, Merlinda Nettles, and Marie Mhoon currently work for MHA as the Interim CEO, Property Manager II, and Resident Services Director, respectfully. (Doc. 14-4 at 1; 14-6 at 1; 14-7 at 1). These defendants have all consented to the dual representation of themselves, MHA, and Pierce in this action. (Doc. 14-4 at 1; Doc. 14-6 at 1; Doc. 14-7 at 1).

Raymond Bell, Marshall Gardner, and the law firm of Maynard Nexsen P.C. (hereinafter "Counsel") are acting as counsel for the above-named defendants in this action. (Doc. 14-1; Doc. 14-2). These attorneys did not represent either MHA or Pierce in Pierce's termination proceedings

and have sworn that they "would not be competent to testify as a witness about that dispute." (Doc. 14-1 at 1; Doc. 14-2 at 1).

Hunter alleges that because of Pierce's termination proceedings, Counsel cannot provide competent representation to both MHA and Pierce simultaneously. (Doc. 6 at 3). Hunter also alleges that Defendants Dickinson, Nettles, and Mhoon "operated within MHA under the structural oversight of Michael Pierce." (Doc. 6 at 3). That subordinate employee relationship allegedly prevents Counsel from advising these defendants "to testify truthfully about directives from Pierce or structural omissions by MHA without violating their duty of absolute loyalty to Pierce and MHA." (Doc. 6 at 3). Additionally, Hunter alleges that Counsel is necessary witness to Pierce's termination proceedings and cannot act as a neutral trial advocate. (Doc. 6 at 3).

As a result of these facts, Hunter moves under Alabama Rules of Professional Conduct 1.7 and 3.7 to disqualify Counsel from representing Defendants Dickinson, Mhoon, MHA, Nettles, and Pierce simultaneously (hereinafter "MHA Defendants"). (Doc. 6 at 1).

## III. Relevant Law

### A. Standing

"Article III standing . . . is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." United States v. Ross, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc) (internal citation omitted). If there is no Article III standing, the Court lacks subject matter jurisdiction to adjudicate the claim.

Article III of the United States Constitution limits the judicial power of the federal court to cases or controversies arising under the laws of the United States. "This case-or-controversy requirement comprises three familiar strands: (1) standing, (2) ripeness, and (3) mootness." Gardner v. Mutz, 962 F.3d 1329, 1336 (11th Cir. 2020) (internal citation omitted). The standing

requirement "'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" Id. at 1337 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

The party invoking the jurisdiction of a federal court bears the burden of establishing the three elements of standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). There must be an injury-in-fact, a causal connection between the plaintiff's injury and the challenged action of the defendant, and a likelihood that a favorable judgement will redress the plaintiff's injury. Gardner, 962 F.3d at 1338 (citing Lujan, 504 U.S. at 560–61).

"[A] plaintiff must demonstrate standing for each claim he seeks to press [and] for each form of relief that is sought." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) (internal citations omitted). Therefore, a party moving to disqualify opposing counsel bears the burden of proving Article III standing. See Doe v. Lee, 178 F. Supp. 2d 1239 (M.D. Ala. 2001) (denying motion to disqualify for lack of Article III standing); accord Booker v. Sec'y Fla. Dep't of Corr., 22 F.4th 954 (11th Cir. 2022) (denying motion to vacate appointment of counsel for lack of Article III standing).

And even where Article III standing exists, there are other limits on a party's ability to "invoke the court's decisional and remedial powers." Warth v. Seldin, 422 U.S. 490, 499 (1975) (distinguishing Article III standing from prudential standing). A party "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." Id.

There are two ways a pro se plaintiff can show prudential standing when seeking to disqualify opposing counsel. First, "[a] party who is not a former client of opposing counsel . . . has standing to raise the issue of opposing counsel's conflict of interest if there is 'a violation of

the rules which is sufficiently severe to call in question the fair and efficient administration of justice.'" McGriff v. Christie, 477 Fed. App'x 673, 676–77 (11th Cir. 2012) (quoting Bernocchi v. Forcucci, 614 S.E.2d 775, 779 (Ga. 2005)); see also Ala. R. Pro. Conduct 1.7 cmt., *Conflict Charged by an Opposing Party* ("Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question.").

Second, "where the rights of a particular party may be compromised by representation in which opposing counsel is engaged, then that party has standing to bring a motion to disqualify, regardless of whether the party is a client or former client of the attorney or firm whose representation the party challenges." Davis v. Southern Bell Tel. & Tel. Co., 149 F.R.D. 666, 673 (S.D. Fla. May 27, 1993) (citing In re Yarn Processing Patent Validity Litigation, 530 F.2d 83 (5th Cir. 1976)); see also In re Employment Discrimination Litigation Against Alabama, 453 F.Supp.2d 1323, 1332 (M.D. Ala. July 9, 2001) ("a party which may be compromised by representation in which opposing counsel is engaged has standing to bring a motion to disqualify, regardless of whether the party is a client or former client of the attorney or firm whose representation is at issue.").

### B. Motion to Disqualify

Although they implicate ethical concerns, "motions to disqualify are substantive motions affecting the rights of the parties." Herrmann v. GutterGuard, Inc., 199 F. App'x 745, 752 (11th Cir. 2006). They are governed by two sources of authority—federal common law and local rules of court. Id. The party moving to disqualify counsel bears the burden of proving grounds for disqualification. In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003). Under this Court's General Local Rules, attorneys are governed by the *Alabama Rules of Professional Conduct* and the Alabama Standards for Imposing Lawyer Discipline. S.D. Ala. L.R. 83.3(i).

"Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist." In re BellSouth Corp., 334 F.3d at 961 (internal quotations and citations omitted). Disqualification of one's chosen counsel is a drastic remedy that should be resorted to sparingly. Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982). When ruling on a motion to disqualify, a court must "be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely choose counsel." Woods v. Covington Cnty. Bank, 537 F.2d 804, 810 (5th Cir. 1976).

"[When] the conduct at issue does not threaten the orderly administration of justice but is allegedly unethical" disqualification decisions rest on "the violation of specific Rules of Professional Conduct, not on some transcendental code of conduct . . . that . . . exist[s] only in the subjective opinion of the court." Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1561 (11th Cir. 1997) (internal citation omitted). "The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." Id.

## IV. Analysis

### A. Standing

Hunter lacks Article III standing to disqualify Counsel. First, she fails to state a constitutionally adequate injury-in-fact that is concrete, particularized, actual, or imminent. In fact, Hunter does not state at all how she will be harmed by Counsel's dual representation of the MHA Defendants. Hunter pontificates only on the injuries that the MHA Defendants might experience, without ever mentioning how her own interests may be harmed. (See Doc. 6 at 3).

Because Hunter has failed to assert an injury, she necessarily fails to show a causal link between that injury and Counsel's behavior, or how anything this Court could do will redress the injury. Accordingly, Hunter has failed to show she has Article III standing to disqualify Counsel.

Assuming Hunter has shown Article III standing, she would also have to show prudential standing. As discussed below, the Court finds no violation of the Alabama Rules of Professional Conduct. Even if this Court accepted Hunter's arguments that Counsel violated Rules 1.7 and 3.7, the alleged violations are not sufficiently severe to call into question the fair and efficient administration of justice in this case. All allegedly affected defendants have consented to representation in the case, and Counsel has sworn that they can provide ethical and competent representation to all clients. (Doc. 14-1 at 1; Doc. 14-2 at 1). Finally, Hunter has not shown that her personal rights have been compromised in this case by Counsel's allegedly unethical conduct.

**B. Alleged Violations of Ethical Rules**

Even though Hunter lacks standing, a federal court has "the authority and duty to inquire *sua sponte* into whether counsel should not serve because of a conflict with another client." United States v. Coleman, 997 F.2d 1101, 1104 (5th Cir. 1993). Therefore, this Court will address the merits of Hunter's claims.

**1. Rule 1.7**

Hunter does not allege that Counsel is undertaking representation directly adverse to another client. Therefore, only Rule 1.7(b) is implicated because 1.7(b) governs a conflict of interest that may be created by simultaneous representation of clients. See Ala. R. Pro. Conduct 1.7 cmt., *Conflicts in Litigation* ("Simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (b)."); Ex parte Tiffin, 879 So. 2d 1160, 1164 (Ala. 2003) (quoting same). Rule 1.7(b) states:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or a third person, or by the lawyer’s own interests, unless:
>
> (1) The lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Ala. R. Pro. Conduct 1.7(b).

Hunter argues that there are two conflicts under rule 1.7: A conflict between codefendants MHA and Pierce, and a second conflict between upper-level supervisors MHA and Pierce, and lower-level employees Nettles, Mhoon, and Dickinson. (Doc. 6 at 3). Hunter, as the party moving for Counsel’s disqualification under Rule 1.7, bears the burden of proving the existence of a conflict of interest. Ex parte Tiffin, 879 So. 2d at 1164. Hunter has not met that burden.

As to the first conflict, Hunter argues that Counsel cannot competently represent both MHA and Pierce. (Doc. 6 at 3). She states “[a] public entity and a terminated employee who exacted a six-figure settlement to alter public employment records have inherently adverse positions regarding operational liability.” (Doc. 6 at 3–4). The fact that MHA and Pierce entered into a settlement agreement in an entirely unrelated litigation, wherein they were represented by different counsel does not prove that there is a current conflict of interest between MHA and Pierce that revolves around the factual allegations relevant to this case. Hunter must show “compelling reasons” why this court should resort to the “drastic remedy” of disqualifying MHA and Pierce’s chosen counsel. In re BellSouth Corp., 334 F.3d at 961; Norton, 689 F.2d at 941 n.4. The exhibits she provides concern a resolved conflict between MHA and Pierce regarding Pierce’s termination proceedings, but allegations of a resolved past conflict do not equate to proof that MHA and Pierce have currently conflicting interests. Hunter has not come close to supporting her burden to prove the existence of a conflict of interest between MHA and Pierce.

Hunter also argues that Counsel's simultaneous representation of MHA/Pierce and employees who worked under Pierce creates a conflict by "trap[ping]" the subordinate employees "under a single defense umbrella with the very supervisors who issued the operational directives at issue." (Doc. 6 at 3). That is the only argument she puts forth regarding the alleged conflict of interest. She provides no supporting evidence. As established above, this lack of proof and severely underdeveloped argument is not a sufficiently compelling reason to deprive any codefendant of their chosen counsel. Additionally, the Alabama Rules of Professional Conduct specifically allow a single attorney to provide dual representation of an organization and its employees when consent is provided. See Ala. R. Prof. Conduct 1.13(e). As discussed below, consent was provided when all defendants waived any conflict.

Even if this Court did find that the representation of any codefendant may be materially limited by Counsel's responsibilities to any other codefendant, that conflict may be waived. Despite Hunter's argument to the contrary, (Doc. 6 at 4), a conflict between codefendants under Rule 1.7(b) can be waived if "[t]he lawyer reasonably believes the representation will not be adversely affected" and "[t]he client consents after consultation." See Ala. R. Prof. Conduct 1.7(b)(1–2). Counsel has submitted two affidavits swearing that neither attorney believes representation of any of the defendants will adversely affect any other defendant, and that they have advised all defendants of the "implications, advantages, and risks of common representation and secured their consent." (Doc. 14-1 at 1; Doc. 14-2 at 1). All the above-named defendants have submitted affidavits swearing that they have consented to dual representation of themselves and all other defendants. (See Docs. 14-3–14-7, at 1). Thus, any conflict under Rule 1.7 has been waived.

**2. Rule 3.7**

Rule 3.7 of the Alabama Rules of Professional Conduct provides in pertinent part that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Hunter alleges that Counsel should be disqualified under Rule 3.7 because Counsel is a necessary witness to "the true reasons for Pierce's ouster, the internal investigations, and the subsequent financial release." (Doc. 6 at 3). She alleges further that "the mechanisms of Pierce's termination . . . are central to discovering the truth of the alleged misconduct." (Doc. 6 at 4). Assuming the "alleged misconduct" is the allegations in Hunter's Complaint, the Court fails to see how Counsel possesses any insider information about Pierce's termination proceedings with MHA. Counsel did not represent Pierce or MHA in that dispute, and Counsel is not a part of a firm who represented Pierce or MHA in that dispute. (See Doc. 14-1– at 1; Doc. 14-2 at 1; Doc. 14-3 at 1; Doc. 14-5 at 1). Counsel has sworn that they would not be competent to testify as a witness about the conflict between Pierce and MHA. (Doc. 14-1– at 1; Doc. 14-2 at 1).

Even if Counsel was competent to testify at trial regarding the past dispute between MHA and Pierce, Hunter must show that Counsel is a "necessary witness" in this dispute. Ala. R. Prof. Conduct 3.7; see also Lane v. State, 80 So. 3d 280, 300 (Ala. Crim. App. 2010) ("The necessity standard requires more than mere speculation that counsel will be required to testify."). Hunter must show that Counsel has "crucial information in [their] possession which must be divulged" during this dispute. See Lane, 80 So. 3d at 299. She has not provided any evidence of Counsel having crucial information, nor has she provided any reason why they might have access to crucial information about this dispute. Accordingly, she has not met her burden under 3.7.

**V. Conclusion**

Hunter does not have standing to disqualify Counsel under Rules 1.3 or 3.7 because she has not experienced any cognizable harm. But even on *sua sponte* review, this Court finds no evidence in the record that Raymond Bell, Marshall Gardner, or the law firm of Maynard Nexsen P.C. must be disqualified from representing defendants Casey Dickinson, Marie Mhoon, Mobile Housing Authority, Merlinda Nettles, or Michael Pierce simultaneously.

Accordingly, Hunter's motion to disqualify defense counsel (Doc. 6) is **DENIED.**

**DONE** and **ORDERED** this 18th day of November 2026.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**